Mr. Kuzniak, you may begin when you're ready. Good morning. You're reserving five minutes for rebuttal, correct? That's correct, Your Honor. If it may please the Court, this is an appeal from the District Court's judgment determining that the underlying patent litigation between Monsanto and Bayer was an exceptional case and awarding $9 million in attorney's fees and costs to Monsanto. By the way, is it Bayer or Bayer? I've always understood it to be Bayer, but it's your client. Well, the fact is, in the United States, it's usually referred to as Bayer. In Europe, it's referred to as Bayer, and sometimes it gets mixed up very easily. We'll give you an extra ten seconds. But the basis was an alleged inequitable conduct with respect to the four patents in suit. I will start with the Court's judgment as to the 546 and the 372 patents because that is the easiest to address, and the Court's decision on those two patents tellingly illustrates the confusion and the disregard of the facts and the law by the District Court. Monsanto had the burden of proving inequitable conduct by clear and convincing evidence, yet it is agreed that Monsanto never mentioned either of those two patents. How would this affect the attorney fee award? If the decision as to the 546 and 372 patents is overturned, then the question becomes whether it is appropriate to award attorney's fees for the entire litigation because if in fact two of the four patents, let's say arguably just those two, which of course we disagree with, but just assume the two patents were not fraudulently procured, then their enforcement certainly should not be subject to attorney's fees, even if two others were. When you say the entire litigation, you mean the entire litigation of the inequitable conduct. Question. We're talking that originally all four patents were in suit and there was a certain discovery taken, certain experts were retained, all addressing the patents, and if all the same work would have had to be done for those two patents alone, then one can question whether or not the attorney's fees should be awarded for the entire case. Are you arguing that the inequitable conduct should not be affecting the 372 and the 546? There is no basis for saying that those two patents were infected because of the alleged 799 application. And the 565. Or the 565. Don't you waive that argument, then? I don't believe so. How would we have waived it? The issue was in the prior decision, this court vacated the judgment of inequitable conduct, remanded it to trial, and it was up to Monsanto at the trial to demonstrate by clear and convincing evidence that there was an inequitable conduct. But if one claim of the patent is at least tainted by the inequitable conduct, does that make the entire patent unenforceable? If a single claim is infected, then the entire patent is held unenforceable. However, this court has repeatedly held that that rule doesn't mean that all patents in a chain become unenforceable, and specifically in app fix versus quick turn design. The court said, quote, no case law from the Supreme Court or this court provides a basis for nullifying property rights granted by the United States when such property rights did not themselves accrue through inequitable conduct. And in the Pharmacia Court, the Parr case, which is cited in the briefs, in the Agafo-Bicrio case, cited in the briefs, and the Baxter-Lee-McGraw case, cited in the briefs, this court repeatedly stated that if you're going to argue that another patent is procured through, or is subject to infectious unenforceability, you have to prove it. In this case, these two patents are divisionals of a patent admittedly not infected. So how can you have a 799, inequitable conduct, then you have a series of other applications, then you have an application that admittedly was not infected, then you have divisionals from the uninfected patent or application, and all of a sudden you have a leapfrogging of inequitable conduct. The court has never held that. But you have claims here in the 372 and 546 patents that are directed to similar subject matter as the 799 patent, whereas the claims are somewhat different from the 565. So there's a reason to contend that perhaps the 565, any determination of inequitable conduct with respect to the 565 would not necessarily infect the 372 or 546, but the same reasoning doesn't apply with respect to the 799 patent because the claims are similar. The claims may be similar, but they're certainly not identical. But more importantly... But because of their similarity, the same issues of materiality come into play. And in this case, the issue is whether certain information that was withheld was material to the 799 application. There is no evidence at all, and none was presented to the court. And this is the key issue, that no evidence was presented to the court that anything that occurred in the 799 still had any application or applicability to what occurred in the 372 and 546 applications. Those divisionals, as I understood the record of the inequitable conduct proceedings, were not really focused on, at least with respect to the Janssen's case. It was the 799 that was the principal focus. That's correct. It was the only focus. Right. So it's a little hard for me to see what consequence flows, as a matter of attorneys' fees, from the conclusion that... I'm going back to my original question. What consequence flows if no one spent any time or money, in effect, on the divisionals and everybody was focusing on the 799? Well, I... In other words, if you lose on the 799, I don't see where that's going to be likely to make a huge difference in terms of the attorney fee, is it? Well, I think it would, because the inequitable conduct portion of the case was focused on the 799, but the actual claims of infringement and the defenses were not focused on the 799, but involved all four patents. And therefore... Of course, the problem is this gets us back into the case which was argued a couple of months ago. That's correct. And it's somewhat unfortunate that we have these two cases separated by time the way it is. But the key point, Your Honor, is that for a long period of time, you had four patents in suit. And there were actually more arguments as to the validity and infringement as to the 546 and the 372 patent than there were as to the 799. It's only the inequitable conduct issue that has been focused on the 799, but the attorney's fees were awarded for work done on infringement and validity as well as on enforceability. There's a footnote on the appendix reference, A-16-746, which states, and this is your argument before the district court and also before us, the footnote states specifically the 372 patent includes chimeric gene plant and plant cell claims. In this regard, quote, inequitable conduct with respect to one claim renders the entire patent unenforceable. So if in fact one claim in the 376 patent would be tainted the entire patent and would be unenforceable from inequitable conduct, according to your statement. Well, I agree that if any one claim of the 546 or 372 patents was held unenforceable, that entire patent goes. But there has never been any record presented whatsoever that there is any inequitable conduct as to any claim of those two patents. In the 372 and the 5-645? That's correct, Your Honor. In the 546 and 372, there has never been a single allegation of inequitable conduct. In fact, no evidence has ever been presented. No evidence was presented in the hearing, at the briefs, or in the summary argument. Rather, we just simply had a judge rule that, oh, this claim, these patents are unenforceable in the order of attorney's face. But if any one of the 372 claims refer to Kemerick Gene claims as they do in the 565, then it would be unenforceable. I don't believe so, Your Honor, because first of all, the court never explained what was the basis for its finding of unenforceability or inequitable conduct. There's simply nothing. So we don't know why the court ruled the way it did. That was never explained. But even if there was something that happened in the 799 or the 565 patents that was allegedly inequitable, how does that translate to these two patents without any explanation? My understanding was that the inequitable conduct issue with respect to these three patents, the 799, 372, and 546 patents, were sort of argued together collectively as a group. Am I wrong? I don't believe that there was anything collectively argued as a group. There was... We certainly filed a suit that had a disclaimer saying terminated the lawsuit as to those three patents. No, I'm focusing on the inequitable conduct question. And it seemed to me that the argument or the discussion was focused on the relevance of the Janssen's declaration with respect to the three patents that relate to claims, broadly claiming plants. I don't believe so, Your Honor. I believe that the allegation was that Janssen's declaration in the 799 application constituted inequitable conduct because that allegedly led to the issuance of the claims in the 799. The 546 and the 372 patent applications have entirely different prosecution records. There was no citation to the prior patent or the prior proceedings. There's just no evidence at all that would tie the two together. And no one, at least from Beyer's side or Monsanto's side, ever said, well, if you decide this, it controls all. That was never argued, never suggested. You're into your rebuttal time. Would you like to save it? I'm sorry, Your Honor. Would you like to save it? Yes. Okay, we'll restore the rest of your rebuttal time and give you five minutes. Very well, Ms. Knoll. May it please the Court. To respond to Mr. Prusiniak's argument that there was never any allegations, never any evidence presented with respect to the 372 and the 546 patent, it's just completely incorrect based upon the record. And to your point, Judge Bryson, that as far as the amount of the awards on the attorney's fees, I have to kind of review how this case has come over the last seven years almost. And all of the discovery took place together. So all of the discovery was done and there wouldn't be a difference in the award because everything, all four patents were discovered together and then there was the separate trial on the 565 patent. That separate trial on the 565 patent happened because Beyer went to the district court and gave this non-assert and they were the ones who lumped all of the plant claims together. They were the ones that said all of these claims were with respect to— The non-assert you're referring to is the covenant not to sue on the other three patents. The covenant not to sue, yeah. All right. Now, if there was a way to distinguish those other patents from the 799 patent, we can be assured Beyer would have found a way to do it and actually do it in the district court. They didn't. They went to the district court and said, we're dismissing these three patents. They're all involving plant claims and that's actually reflected in the district court's opinion at A63.29, the top of the page. Beyer then dismissed the 799, 372, and 546 patents per-en regarding plant claims from the case leaving the 565 patent per-en chimeric gene claims for litigation on remand. So, all of these plant claims were lumped in the same bucket by Beyer when we went back down to the district court again. Now, the other issue... Is that true for the inequitable conduct proceeding though? Yes, Judge. That's absolutely right. Everything was treated all together. Now, in terms of the testimony at the trial was, this Janssen's declaration in the first of the four patents that issue was directed to the comment that any BT gene works in any plant. So, all of the other two patents do have plant claims. That was the reason Beyer dismissed them. And so, the testimony from Mr. Bulkesian and others is there was this continuing duty in the prosecution and that's reflected in the district court's opinion that if that was a false statement, it should have been corrected to the patent office and it wasn't. I mean, the district court in this case found that not only did Mr. Janssen's lie to the patent office, he lied in his deposition, he lied in his trial testimony and he lied when he was actually given the opportunity to tell the truth at trial. So, this is all together. So, to the extent there's, as we expected, those two patents, all the claims were lumped together, they were lumped together by Beyer and they were all tried together. Now, the other issue is that Beyer never went back to the district court after he entered the first final judgment the one that was first issued that says patents are invalid, not infringed and then the last line in it that says and all four patents are unenforceable. So, Beyer never went back to the district court ever and said you can't do that. This is the first time it's ever been raised is in this appeal that somehow the district court couldn't make a finding of unenforceability or inequitable conduct with respect to these other two patents. Well, they did make the argument that which was argued to us a couple of months ago that the court didn't have jurisdiction for inequitable conduct of the three patents that were not asserted in the action, correct? Well, they've asked you to vacate the judgment of unenforceability. Right. But they never went back to the district court at the time he entered the judgment and said you can't do this because, I mean, they didn't give the district court the opportunity to go back and say well, yes I can because here's this is how we considered it and this is how we treated it. And if you look in the opinion, I mean You're saying that they didn't make the argument in the earlier on the merits that's set aside the attorney fee that the district court didn't have jurisdiction to address the other three patents? They made the argument that it should be vacated because you didn't have jurisdiction. Yes, they did make that argument. To the district court? No. They didn't, they never made that argument to the district court? No, sir. Okay. Now With respect to the 372 and the 546 patent did they ever make the argument during an equitable conduct bench trial that they should be not be infected by the others? No. That issue actually was dealt with on the summary judgment and the judge in this order incorporates his summary judgment order in which there was a finding that they were infectiously that these three patents were infected by each other and the district court has incorporated that order in this order. Now one of the points in Bayer's blue brief at the beginning is saying he's just reinstated his old summary judgment order without consideration of the new evidence and he did reinstate his, you know, he did reference in his original order finding infectious unenforceability as to these three patents and Bayer never challenged that again. So where we stand right now and this is you know, goes to part of the issue of why Monsanto is arguing this has been waived is that in the first final judgment there was a finding and a holding that there was an equitable conduct in all four patents. Bayer then without ever having raised it to the district court or done anything about it on its own in this appeal has now come back and said well, we're not going to address that part of the first final judgment in the first appeal. We've decided on our own we can address it in the second appeal and that's where Monsanto's waiver argument has come in is because why did they get to do this? I mean, why did they get to have two briefs from one final judgment? It's a consequence I suppose of this unfortunate bifurcation of merits and attorney fees appeals but that's been going on for a while now and Yeah, but the inequitable conduct finding was made. It was already in existence. Bayer hasn't challenged any other aspect of the exceptional case determination and not with respect to you know enough findings for exceptional case. If you affirm that there was inequitable conduct in these three patents the district court's decision on the award of the money has to stand because there's no other basis to reverse it. So if you affirm on the inequitable conduct finding then the exceptional case, the amount of the money, everything else still stands. And you can do that without waiting on the first appeal and deciding the merits or this appeal on its merits but you know our point is that when appeals are made from final judgments and the final judgment that was the first final judgment that was issued in this case was argued the last time and so and that judgment was that all four patents are unenforceable. Correct. And in that appeal Bayer never raised the merits of the inequitable conduct of these three patents. So, oh, I mean another point that my colleague just reminded me of is that at no time in the district court did Bayer ever argue that there was no uninfectious unenforceability as to these three patents. So, that's a question of whose, I mean, I understand your arguments but normally that would be your burden not theirs. And what I'd like to point out and it's page two of the red brief of the findings that the district court did make at page A6330 of the opinion. And this is, you know, this is a district court who did everything he could have and should have to come to the right decision with respect to this issue. He found at page two of the red brief and at A6330 the orchestration of deceit of purposeful misrepresentation of material fact, of intentional nondisclosure of material fact, and submission of false material information with the intent to deceive and mislead the patent office examiner has been proven by clear and convincing evidence. The weight of equities of the parties clearly and convincingly warrant a conclusion that Bayer and its antecedent companies committed inequitable conduct before the patent office and the prosecution of 799, the 372 patent, and the 546, and the 565 patent. Now, as presented to the district court, these people violated rule 56 in about every way they could be violated. Withholding information, submitting false information, making arguments that were inconsistent to things they knew to be true with respect to the data, and so on that basis, and based upon the credibility of the witnesses that the district court assessed sitting there watching them, and this all unfolded in front of the district court. The judge saw Mr. Jansen's demeanor in his deposition. He saw his lack of truthfulness as the district court pointed out time and time again throughout this   case. And the reason this high mortality, low mortality, growth inhibition, whichever, came into the discussion was because Mr. Jansen was changing his testimony again on the stand, and in response to about six questions, I asked him, you know, where does it say it says no insect control, correct? And Mr. Jansen would come back and say, well, there's not high mortality. And I'd ask the question again, and he'd come back and say, well, there's no high mortality. And finally, I said, you know, A31193, I think. Yes. A31193. And that was on cross examination of Mr. Jansen. So this wasn't an error by the district court. This is a bit of a misrepresentation of what the judge was analyzing and what he was doing in his opinion when he gets to this insect controlling amount. What he was doing is he was saying, this is, again,  untruth by Mr. Jansen. So in summary, Your Honor, I'd just like to say if the court doesn't have any more questions, is that this was a district court who did everything he could and gave every opportunity to defend itself against these charges of inequitable conduct. He made all of the findings. He did two things. He found it was a false declaration and he also found that all of these excuses that Mr. Jansen had offered didn't hold water. And having done his job properly, I would like to  that  Jansen did     against these charges of inequitable conduct. He did everything he could to defend himself against these charges of inequitable conduct. And I would            of inequitable conduct. And I would like to that Jansen did everything he could like to that Jansen defend himself against these